JACKSON FURNITURE COMPANY *vs.* BENJAMIN LIEBERMAN.

JULY 5, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an appeal from a decree of the superior court denying and dismissing complainant's petition to adjudge respondent in contempt for alleged violations of certain injunctions of that court by decree of August 17, 1938.

Complainant contends that the trial justice erred in finding that the respondent had not violated the injunctions. In support of this general contention, he argues six points as follows: (1) The sales to Wilfred Amirault were violations of the third paragraph of the decree; (2) the sale to Laura Carielo was also a violation of that paragraph; (3) the sale to Lena Favreau was a violation of the first paragraph of the decree; (4) the gifts of merchandise by respondent to clubs and churches in the neighborhood were also violations of that paragraph; (5) the sales after August 17, 1938 to customers to whom sales were made before April 30, 1938 were violations of the third paragraph of the decree; and (6) the solicitation by respondent of complainant's customers to whom respondent had previously made unsolicited sales was a violation of the first paragraph of the decree.

The persons above named were customers of the complainant who is engaged in the business of selling household furniture, furnishings, and similar merchandise at retail in the city of Providence. The major portion of its customers is obtained by house to house solicitation. This solicitation is done mainly by canvassers who make the first contact and thereafter by collectors, who call weekly upon the customer for installment payments and frequently make additional sales to such customers.

The respondent was a collector for the complainant under a written contract from April 26, 1932 to April 16, 1938, during which time he covered the Olneyville, Mount Pleasant and Manton sections of the city of Providence and also a number of villages in certain towns to the north and west of the city, which need not be enumerated here. In the week following Saturday, April 16, 1938, the respondent went into the furniture business on his own account and, very soon thereafter, opened a store at 930 Atwells avenue, which is in the general neighborhood of the Olneyville, Mount Pleasant and Manton sections.

During the next three months respondent solicited in that neighborhood a very large number of the complainant's customers, until finally the complainant was prompted to take action against him, because it was sustaining a loss of business in these sections. On August 2, 1938, it brought a bill in equity, alleging that the respondent in thus soliciting its customers was violating his contract with the complainant, and praying that he be enjoined from such further violations and that he be ordered to account for profits made from sales to such customers in violation of the contract, and for further relief. By agreement of the parties a final decree was entered on this bill on August 17, 1938, and it is for alleged violations thereof by the respondent that complainant brought the instant petition to have respondent adjudged in contempt.

The paragraphs of this decree, which the complainant contends have been violated, are: "First: That until April 16, 1940, respondent be and is hereby enjoined and restrained from soliciting or attempting to solicit, for himself or others, directly or indirectly, the business or patronage of any of those persons from whom said respondent has made collections while in the employ of the complainant and who have been customers of the complainant since April 26, 1932, wheresoever they may reside; . . . Third: That respondent be and he hereby is also enjoined and restrained from selling any additional merchandise until April 16, 1940 to those customers of the complainant from whom he made collections while in the employ of complainant and to whom, as the result of direct or indirect solicitation, respondent has sold merchandise since leaving the employ of the complainant, but nothing contained herein shall be construed to prevent the respondent from making collections from the aforesaid customers for merchandise hitherto so sold."

The first four contentions of the complainant are based on what complainant describes in its brief as scattered violations of the decree of injunctions, which, it argues, alone made the final decree in the instant proceeding technically erroneous. We have carefully examined the transcript in considering these contentions and we are of the opinion that the evidence is not such as to warrant us in deciding that the trial justice was clearly wrong in finding that the Amirault, Carielo and Favreau sales did not constitute violations of the decree.

As to the sale of shirts to Amirault, it is clear that such a sale is not within the purview of the decree. The complainant's own bill is predicated upon damage to its furniture business. "Additional merchandise", as that term is used in the decree, obviously means merchandise sold by the respondent as collector for the complainant, and such merchandise was "household furniture and furnishings and simi-

lar merchandise" as stated in complainant's bill of complaint. Furthermore, there was no proof that, as of the day of the decree, August 17, 1938, complainant sold shirts to its customers. Respondent testified that during his service with complainant he never sold shirts to their customers. The fact that the collector who took respondent's place testified that he sold shirts to complainant's customers in November and December of 1938 does not help the complainant on this point. There is nothing in the transcript that would warrant us in reversing the finding of the trial justice even if the decree could be interpreted to include shirts as merchandise under the ban of the injunction.

The Carielo sale, which is also alleged to be a violation of the third paragraph of the decree, was transacted on April 22, 1939, and was a sale of furniture. There was no evidence that this sale was solicited, and complainant admits it would not be a violation of the decree, unless a prior sale, which the respondent made to her on April 30, 1938, was solicited. The purchaser Carielo was a witness for the complainant. After testifying that she had gone to the respondent's store on April 30, 1938 and purchased a spread, she was recalled to the stand by complainant to refresh her recollection as to such testimony, because of certain testimony to the effect that respondent did not occupy the store at 930 Atwells avenue on April 30, 1938, which complainant's counsel told the witness had come in after she had testified. The witness then testified that the sale was made at her home.

On cross-examination, however, she stated it was made at the store, and, finally, she said she couldn't remember where it was made. Since Mrs. Carielo was complainant's own witness, and since complainant was trying to prove by her evidence that the sale of April 30, 1938 was solicited, it had the burden of proof. The trial justice's discussion in his decision of the testimony of this witness shows that he was not impressed by it as furnishing proof of a solicited

sale by the respondent. We agree with the view of the trial justice.

The sale made to Mrs. Favreau on May 8, 1939 was of a parlor set. She was a customer of the complainant to whom respondent, on his own account, had made two unsolicited sales before the date of the decree, August 17, 1938. Complainant contends that respondent had no right to solicit this sale; that the evidence shows that he did solicit it and therefore that he violated the injunction.

As in the Carielo sale, the complainant attempted to prove solicitation by the testimony of the purchaser, and, as in that instance, the witness when first called testified that *she suggested* to the respondent that she wanted to buy a parlor set from him and that later she went to his store on Atwells avenue and bought it. Later, when she was recalled and her recollection was refreshed, she said that after talking to complainant's counsel she could not remember where the sale was made; and she also testified that the respondent had asked her if she wanted anything and that she said in reply she would let him know later on.

Complainant contends that this is proof of solicitation, and especially as the respondent himself had previously admitted that he had suggested to Mrs. Favreau that she come in to his store. The respondent's counsel, however, points out that this invitation was given only after Mrs. Favreau had first inquired of him concerning a parlor set.

The trial justice found this testimony unsatisfactory and contradictory on the question whether there was solicitation of this customer by the respondent. We cannot say that in this he was clearly wrong. The witness was called by the complainant and the burden was upon it to show that this was a solicited sale. Assuming that the burden on the complainant was only to prove its contention by a preponderance of the evidence, we are nevertheless of the

opinion that the trial justice was not clearly wrong. In order to do this, we must not merely differ with him, as to where the preponderance lies, but we must be able to say that the great weight of the evidence is against his finding.

As to this sale, the respondent makes a further argument that, even though solicited by him, it would not be a violation of the decree, because she was as much his customer as the complainant's, by reason of two undisputed, unsolicited sales to her before the date of the decree. It is not necessary to pass upon this contention now in order to decide this particular point. However, we shall consider it *infra,* since the same question is raised separately by complainant's sixth point.

Under its fourth point complainant contends that gifts of merchandise by respondent to clubs and churches to which some of its customers belonged were, in themselves, acts of indirect solicitation of such customers in violation of the decree. The trial justice said that he could not "go thus far with the complainant." Complainant finds fault with this statement as not being a finding of fact but a conclusion of law. Whatever it is, we are of the opinion that, on the record here, the trial justice was justified in making it. Whether or not such contributions would be violations of the injunctions if it could be shown that they were given to specifically identified customers of the complainant, it is not necessary to decide here, as there is no evidence in the record of that character.

The complainant's only basis for its contention is the testimony of the respondent himself that a member of the Portuguese-American Club, who was a customer of the complainant, came to his store and obtained a donation of some merchandise for that club and that respondent had sold this member some merchandise for his personal account. There is no evidence of any other customers of complainant being members of this club. Even assuming without decid-

ing that the trial justice erroneously dismissed this contention as a matter of law without passing on the evidence, we find that this admitted gift of merchandise to this club did not, at least under the circumstances in this instance, constitute a violation of the decree.

The complainant's fifth point is predicated upon its claim that respondent did not open his store at 930 Atwells avenue until after May 2, 1938. On that assumption complainant contends that certain specific sales to John Desrosiers, Lena Favreau, Angelo Marchetti and Laura Carielo, which respondent claims were unsolicited because they were made "at the store", cannot be considered unsolicited for that reason, as the respondent, it contends, was not the occupant of that store at that time. The complainant introduced evidence tending to show that a club known as the Mt. Pleasant Social Club was in occupation of the premises at 930 Atwells avenue until May 2, 1938, and, therefore, that the respondent could not have been conducting his store there in April 1938, in which month the above-named persons had testified they had made purchases there. The secretary of the club testified that the Mt. Pleasant Social Club did not move from the premises at 930 Atwells avenue until May 2, 1938, and that he had a receipt for the rent of those premises signed by the landlord on that date. This receipt was admitted in evidence as an exhibit and reads as follows:

"May 2, 1938

Received from Mt. Pleasant Social Club Rent in full to April 30, 1938. This Terminates Rental and all Claims are paid in full for use of Premises.

Amore Baking Co.
Wm. M. Chapman."

William M. Chapman is the bookkeeper for the Amore Baking Company. He testified that the Mt. Pleasant So-

cial Club vacated the premises early in April 1938, and that the respondent occupied them about the middle of that month. He gave the following reasons for making the receipt in the above form. The club was in arrears of rent for the month of March 1938, because of some difficulties with its treasurer; some of its members had been annoying women customers of the landlord's bakery, which was next door to the club, and the landlord complained and asked the club to move, but the club held over a few days in April; the club owed the landlord for some bread and other mer-. chandise, which had been supplied to the club, and finally the club had damaged the premises. All of these things, he testified, were considered when the club moved early in April and when he received the rent that was due he made out the receipt to cover everything. This explanation seems reasonable. Chapman was totally disinterested and he apparently made a good witness as far as we can judge from the transcript.

On its face the receipt is not a mere rent receipt but apparently a release or discharge of claims as well. Chapman's explanation is consistent with the unusual form of the receipt and may very well be true. Whether it was or not was for the trial justice to decide. The receipt apparently did not convince him that the respondent was not in occupation of these premises sometime in April 1938, which was the fact that the complainant undertook to prove. There was a clear conflict on this issue and since the trial justice had the advantage over us of seeing and hearing the witnesses testify, we cannot say from our perusal of the transcript that he was clearly wrong.

Complainant's sixth point is that respondent's admitted solicitation of its customers after he had made unsolicited sales to them constituted wholesale violations of the injunctions in the first paragraph of the decree. The respondent contends, on the other hand, that once a customer of the

complainant, entirely unsolicited by the respondent, came to him and made a purchase, such person thereafter became and was as much his customer as a customer of the complainant, and further that he acquired thereafter a right to solicit such customers without violating the court's injunction. The respondent relies on *Colonial Laundries, Inc.* v. *Henry,* 48 R. I. 332, in support of this contention, and especially that part of the opinion wherein the court said, at page 340: "In taking such action equity does not interfere with respondents' right to do business with these customers but it forbids *initiation* of that business by the use of information given the employee in confidence. The terms of the injunction do not enjoin the respondents from dealing with any who were their customers. Acceptance of patronage of all who voluntarily decide to employ them is not interfered with . . . ." (italics ours)

The respondent argues that the injunctions in the instant cause did not forbid competition but that if the complainant's view were adopted, that would be their effect and it would be clearly contrary to the maintenance of a policy of free competition in trade and business. In reply complainant argues that the *Colonial Laundries, Inc.* case is not in point, because that was a case of laundry customers who were purchasing service which normally continues, if no fault is found therewith, whereas the instant cause concerns the furniture business, where each sale is a wholly independent transaction in itself with no guaranty that further sales will follow. This distinction, complainant argues, was recognized in the following language at pages 338, 339 of the *Colonial Laundries, Inc.* case, *supra:* "In trade, generally, the traveling salesman has no assurance of an order unless he can satisfy the customer that his merchandise is cheaper, better, or more salable than his competitors. The customer each time desires to examine, inspect and compare merchandise and prices offered to him. Each sale is a distinct transaction carrying no implication that another will

follow. The list of people upon whom he calls has no market value apart from a general good opinion of the employer's methods and goods and prices. A particular laundry route has a definite market sale value. The given customers pay little attention to whose services they receive. The quality of the service is so similar that the customer invites the person rendering the service to call at definite periods and to keep on rendering such service until further notice."

We fail to see how this quotation is of benefit to the complainant. The inference to be drawn from it is clearly that a mere list of customers in the retail business has no real market value. We are, therefore, of the opinion that the distinction which complainant seeks to make in its favor between that case and the instant cause is not valid. The underlying principle in both cases is the same. Here we have a decree of injunctions which prohibits the respondent from soliciting complainant's customers. It should be stretched no farther than is necessary to protect the complainant from invasion, by the respondent, of its exclusive right under the decree, as to at least the respondent, to solicit its customers and to sell to them furniture, household furnishings and similar merchandise. In our opinion no such invasion occurs where, as in this case, the customer and not the respondent initiated the business relation between them. In such a case, it may well be said that the customer has himself removed the barrier which excluded the respondent from soliciting his trade, and that he has thus voluntarily created the business relation which the respondent has the right to retain if he can. We are, therefore, of the opinion that the trial justice did not err in holding that it was not a violation of the decree for the respondent to solicit customers to whom he had previously made an unsolicited sale. Complainant's sixth point is, therefore, without merit.

We have thus disposed of all the points upon which the complainant based its reasons of appeal, but there is one

phase of its argument which we have reserved for final treatment. It argues, as we understand it, that the trial justice, in weighing the evidence before him, erred in holding complainant to a heavier burden of proof than the law requires. Complainant maintains that it had no greater burden in proving the alleged contempt of the injunctions by the respondent than in the ordinary civil case, namely, proof by a fair preponderance of the evidence. It claims that the trial justice decided the case against it because he felt that the evidence of violations of the injunctions was not clear and convincing and thus he did not give it the benefit of the proper rule.

We see no necessity on the record here to decide the question of the degree of proof necessary to establish contempt. Whatever degree of proof the trial justice may have deemed incumbent upon the complainant, it is clear from his rescript that he found the complainant's evidence to be insufficient to establish its case, even under the rule of fair preponderance as applied in the customary civil case. He expressed his state of mind on the evidence as follows: "When all the testimony is boiled down there remains but a strong *suspicion* that the respondent did violate the injunction in one or two instances.". (italics ours)  A fair preponderance of the evidence is supposed to create in the mind of the trier of facts a conviction that the party, upon whom is the burden, has established its case, and not a mere suspicion that it has, however strong that suspicion may be.

The evidence in the instant cause must have fallen short, even of a fair preponderance, to create in the mind of the trial justice no more than a suspicion that the respondent violated the injunctions. From our examination of the evidence we see no reason to disagree with the trial justice. Assuming, without deciding, that he should have held complainant to no greater degree of proof than a fair preponderance, complainant's evidence was clearly lacking in the

weight necessary to discharge even that burden. The trial justice, therefore, did not err in finding that the complainant's evidence failed to establish its case.

The complainant's appeal is accordingly denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Greenough, Lyman & Cross, Harvey S. Reynolds, John M. Gross,* for complainant.

*John C. McOsker, Fergus J. McOsker,* for respondent.